IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>JESSE R. BENTON<br>JOHN F. TATE, and<br>DIMITRIOS N. KESARI<br><br>    Defendants. | No. 4:15-cr-103-JAJ-HCA<br><br><br><br>**ORDER** |

    The three Defendants in this case used to work for the Ron Paul Presidential Campaign Committee. The Government alleges that while they worked on that campaign, they concealed payments to Kent Sorenson by paying two companies who did not do work for the campaign. Those companies then paid Mr. Sorenson. Counts 2-4 of the indictment allege that during that process, Defendants falsified or caused to be falsified the campaign's records and reports to the FEC, in violation of 18 U.S.C. §§ 2, 1001(a)(1), & 1519, and 52 U.S.C. §§ 30104(a)(1), 30104(b)(5)(A), & 30109(d)(1)(A)(i). Count 1 alleges a conspiracy to falsify those records and reports, in violation of 18 U.S.C. §371.

    On July 21, 2014 and August 19, 2014, respectively, Defendant Benton and Defendant Tate gave proffers to the FBI, pursuant to proffer agreements. Count Five alleges that Defendant Benton made false statements in that proffer session, in violation of 18 U.S.C. §§ 2 & 1001(a)(2).[1] Count 1 also discusses the proffer sessions, alleging that both Defendant Tate and Defendant Benton lied in their proffer sessions, and that those lies are overt acts in furtherance of

---

[1] Count Six alleges that Defendant Kesari obstructed justice in violation of 18 U.S.C. § 1512(b)(3), and is not at issue in this order.

the conspiracy. The grand jury that indicted the defendants heard testimony about the proffer sessions.

Defendants Benton and Tate move to dismiss Counts 1-4, arguing that the use of their proffered statements violated the proffer agreements.[2] The Government opposes the motion on a variety of grounds, including that this prosecution is a prosecution for false statements specifically permitted by the proffer agreement, that the Defendants knew the statements would be used, and that the proffer agreement's limits do not apply to grand jury testimony.

### I. BACKGROUND

**A.    The Grand Jury Testimony**

At the grand jury, a prosecutor in this case directed FBI Special Agent D'Amico's attention to various overt acts listed under Count 1, and asked him to confirm that each event occurred. The testimony dealing with the proffer sessions was as follows:

Q. Agent D'Amico, during the July 21st into July 22nd proffer session, Mr. Benton falsely stated that there were no payments from the Paul Campaign to Senator Sorenson either directly or through any other entity?

A. He did.

Q. Turning your attention to act (bbb), in that proffer session on July 21st and July 22nd, 2014, did Mr. Benton falsely state that he was not aware of any payments from the Paul Campaign to Senator Sorenson either directly or through another entity?

A. He did.

Q. Turning your attention to act (ccc), on or about July 21st, in the proffer session with the FBI in response to questioning about whether the Paul Campaign paid Senator Sorenson

---

[2] Defendant Benton also moves to dismiss Count 5 as a sanction for the improper use.

through a third party, did Mr. Benton falsely deny that Senator Sorenson was paid by the Paul Campaign either directly or through a third party saying "I am not splitting hairs. Sorenson was not getting paid"?

    A. He did.

    Q. On or about July 22nd, during that two-day proffer session with the FBI, did Mr. Benton falsely state that there was no way Senator Sorenson would be paid after Mr. Benton had told the press that Senator Sorenson was not being paid by the Paul Campaign?

    A. He did.

    Q. And on or about that same day, July 22nd, in the proffer session with Mr. Benton, did he falsely state that Senator Sorenson had not been paid by the Paul Campaign because once Mr. Benton said Senator Sorenson had not been paid by the Paul Campaign, Benton "could not just lie to the press" and arrange for Senator Sorenson to be paid by the Paul Campaign as the payment "would be on an FEC report"?

    A. He did.

    Q. Turning to act (fff), on or about August 19th, 2014, in a proffer session with the FBI with Mr. Tate, did Mr. Tate falsely state there were no payments from the Paul campaign to Senator Sorenson either directly or through another entity?

    A. He did.

    Q. And turning to act (ggg), on or about August 19th, that same day, in the same proffer session between Mr. Tate and the FBI, did Mr. Tate falsely state that he was not aware of any payment from the Paul Campaign to Senator Sorenson either directly or through another entity?

    A. He did.

**B.     The Proffer Agreements**

The proffer agreement used for Defendant Benton was identical to that used for Defendant Tate, except that the names were changed. Paragraphs 1 – 5 of the agreements read:

> 1. [The defendant] will answer honestly, truthfully and completely all questions posed to him/her by agents and attorneys of the United States.
> 2. By discussing these matters and by accepting [the defendant]'s proffer, the United States does not intend in any way to agree to, or represent that it will, confer immunity upon [the defendant] for any possible federal criminal acts committed by him/her, nor has the United States made any representation or agreement about the disposition of any federal criminal charges which might be filed against him/her.
> **3. Should any prosecution be brought against [the defendant] by the United States, the United States will not offer in evidence in its case-in-chief against [the defendant], or at sentencing of [the defendant], any statements made by [the defendant] pursuant to this proffer agreement, except in a prosecution for false statements, obstruction of justice in the current investigation, or perjury, or as noted in paragraph 5.**
> 4. The United States can use information derived from statements by [the defendant] under the proffer agreement directly or indirectly for the purpose of obtaining leads to other evidence, which evidence may be used by the United States against [the defendant] in any prosecution of him/her.
> 5. Should any prosecution of [the defendant] be undertaken, the United States may use [the defendant]'s statements as substantive evidence for the purpose of cross-examination of him/her should [the defendant] testify at any phase of trial or sentencing. The United States may also use [the defendant]'s statements as substantive evidence to rebut any evidence, factual assertions, or arguments offered by or on behalf of [the defendant] at any phase of trial or sentencing.

(emphasis added).

## II. LEGAL FRAMEWORK

Proffer agreements are informal immunity agreements, governed by their terms and interpreted using contract interpretation principles. *U.S. v. Luloff*, 15 F.3d 763, 766 (8th Cir. 1994) ("[T]he scope of informal immunity is governed by the terms of the immunity agreement."); *U.S. v. Perry*, 640 F.3d 805, 808 n.1 (8th Cir. 2011) ("The proffer agreement… is intended to protect the defendant against the use of his or her statements."); Wayne R. LaFave et. al., *Informal grants of immunity*, 3 Crim. Proc. § 8.11(e) (3rd ed. 2014) ("[I]nformal immunity is

often sought by prospective witnesses for information provided apart from their testimony, such as a proffer.").

### III. ANALYSIS

Defendants Benton and Tate contend that the government breached the terms of their proffer agreements by presenting statements they made at their proffer sessions to the grand jury to secure indictments. Specifically, they point to the limitation on the use of their proffer statements in paragraph 3 of the proffer agreement. In it, the Government promised that it would not offer "in its case-in-chief against [the defendants], or at sentencing of [defendants], any statements made by [defendants] pursuant to this proffer agreement, except in a prosecution for false statements, obstruction of justice in the current investigation, or perjury, or as noted in paragraph 5."[3] And so the question is whether the indictment in this case is a "prosecution for false statements, obstruction of justice in the current investigation, or perjury."

Count 1 of the indictment does not charge false statements, obstruction of justice or perjury. It alleges a conspiracy to falsify campaign records, as substantively alleged in Count 2 of the indictment, to cause submission of false expenditure reports as substantively alleged in Count 3 of the indictment, and to falsify invoices as substantively alleged in Count 4 of the indictment.

The court must determine the intent of the parties when they limited the potential use of defendants' statements to a "prosecution for false statements, obstruction of justice in the current investigation, or perjury." Does this limitation apply to any allegation of false statements, obstruction of justice, or perjury, as the Government contends, or does it simply permit

---

[3] Paragraph 5 states that the government can use proffer statements to impeach the defendants' testimony at trial or for rebuttal purposes.

prosecutions for false statements, obstruction of justice and perjury arising out of the defendants' statements at the proffer session?

The entire purpose of the proffer agreement is to determine what the government can and cannot do with the defendants' proffer statements. Paragraph 1 requires the defendant to answer honestly, truthfully, and completely all questions posed to him. Paragraph 2 makes it clear that no immunity is conferred on the defendant because he participated in the proffer. Paragraph 3 states that the defendant's statements will not be used against him at trial or sentencing with four limited exceptions. Paragraph 4 governs derivative use of the defendant's statements at the proffer. Paragraph 5 makes it clear that the statements can be used for impeachment or rebuttal purposes. Every single paragraph of the proffer agreement relates to the use of the defendant's statements against him. Thus the reference to "false statements, obstruction of justice in the current investigation, or perjury" must pertain to the use of the defendant's proffer statements in a prosecution for false proffer statements. *See U.S. v. Al-Esawi*, 560 F.3d 888, 893 (8th Cir. 2009) (finding the Government "over-extended" the use of proffer statements when it used them to convict the defendant of lying to federal agents before the proffer, although the proffer agreement allowed their use "in a prosecution for false statements"); *U.S. v. Moro*, No. CR. 09-137, 2010 WL 3810041, at *2 (D.N.J. Sept. 22, 2010) ("[F]alse statements during [a] proffer session in violation of 18 U.S.C. § 1001" were "exactly the type of prosecution contemplated" by an agreement allowing the admission of proffer statements in a prosecution for "false statements, perjury, or obstruction of justice").

Certainly, overt acts aaa-ggg in Count I allege that false statements made during the proffer sessions were made in furtherance of the conspiracy. However, it was not the object of the conspiracy to violate 18 U.S.C. § 1001 by making false proffer statements. Thus, the

indictment's references to the allegedly false statements are evidence in support of the conspiracy and not an object of the conspiracy. Listing the false statements as overt acts is not a "prosecution for false statements, obstruction of justice in the current investigation, or perjury." A "prosecution for false statements" indicates a criminal charge for making false statements. As noted above, because the entire object of a proffer agreement is to govern the use of statements made at the proffer session, the "prosecution for false statements" must necessarily charge the defendant with a crime for making false statements at the proffer session.

That limitation extends to the grand jury stage of proceedings. Paragraph 3 refers only to the Government's case-in-chief and sentencing. If that were all the agreement said, the limitation would only apply at those stages of the case. But Paragraph 5 adds that: (1) if the defendant testifies, the Government "may use [his] statements as substantive evidence for the purpose of cross-examination at any phase of trial or sentencing;" and (2) the Government can use his statements to rebut any evidence or arguments offered on the defendant's behalf. Paragraph 5 therefore "creates a condition precedent to using the contents of [the defendant's] proffer session against him" at any phase of trial or sentencing. *See Perry*, 640 F.3d at 812.

These proffer agreement here is similar to that addressed by the Eighth Circuit Court of Appeals in *Perry*. The proffer agreement in that case, like this one, had a provision that limited the Government's use only at certain stages of the case. *Id.* The Government there argued that "by omission the proffer agreement indicates that the information can be used in all other proceedings." *Id.* But that agreement, like this one, had another paragraph allowing the government to use proffer statements "in an [*sic*] legal proceeding" only under certain circumstances. *Id.* The court held that the agreement therefore "ambiguously delinate[d] the limitations" on proffered information "and must, accordingly, be construed against the

Government." *Id.* at 813. It held that the more restrictive paragraph controlled. *Id.* The decision in *Perry* controls here.

*U.S. v. Hoffman* does not require a different outcome. The *Hoffman* court found that "the government… did not promise [the defendant] that his statements would not be used in a grand jury presentation." *United States v. Hoffman*, No. CRIM.A. 14-022, 2014 WL 5040721, at *6 (E.D. La. Oct. 8, 2014). It confronted a similar proffer agreement: in one paragraph, the government promised not to use proffer statements in its case in chief, and in another, limited its use of proffer statements "in a legal proceeding." *Id.* at *5. That court was not asked to and did not confront the tension between the two provisions. *Id.* at *5-6. Even if it had, and even if it had reached a contrary result, *Perry* is controlling in this circuit and *Hoffman* is not.

The FBI did not change that limitation when it warned the defendants at their proffer session that the grand jury would hear their statements. The FBI reports suggest defendants were only given that warning *after* they gave statements in reliance on the proffer agreement. Government Opposition at 9, n.2 (noting that both defendants were warned that their statements would be used before a grand jury and giving them a chance to change their statements). The Government cannot unilaterally modify proffer agreements after hearing the proffer.

### IV.   REMEDY

The Government argues that dismissal is not an appropriate remedy here, citing a distinction between immunity agreements and proffer agreements. It argues that only indictments obtained in violation of immunity agreements can be dismissed. That distinction exists; statements made with the promise of statutory immunity are compelled, while statements made with the promise of informal immunity are not. *See U.S. v. Shepard*, 495 Fed.Appx. 553, 7 (6th Cir. 2012) *U.S. v. Detore*, No. 4:01CR207, 2002 WL 1359692, at *2 (N.D. Ohio May 13, 2002).

If a witness with statutory immunity is prosecuted, *Kastigar v. U.S.* requires the court to hold an evidentiary hearing and the government to prove "that all of the evidence it proposes to use was derived from legitimate independent sources." 406 U.S. 441, 461-62 (1972). Out-of-circuit authority holds the *Kastigar* procedure inapplicable to proffer agreements. *Detore*, 2002 WL 1359692 at *3; *State v. Lynch*, 2007-Ohio-294, ¶ 12. But those cases do not suggest an alternative; the proffer agreements there were not breached. *Id.*

This circuit still sees proffer agreements in the context of constitutional protections: they are "part of ongoing criminal proceedings" and this Court must ensure "the bargaining process [does] not violate the defendant's rights to fundamental fairness under the Due Process Clause." *U.S. v. Farmer*, 543 F.3d 363, 374 (8th Cir. 2008) (addressing the interpretation of a proffer agreement). The Eighth Circuit has drawn on *Kastigar* to analyze proffer agreement cases. *U.S. v. Yielding*, 657 F.3d 688, 706 (8th Cir. 2011) (explaining that the lack of a *Kastigar* hearing was harmless); *U.S. v. Ziesman*, 409 F.3d 941, 948 n.2 (8th Cir. 2005) (using a proffer agreement's language to "remove[ it] from the rule of *Kastigar*). And it has indicated that dismissal is an appropriate remedy even when the testimony is not compelled. *See U.S. v. Brown,* 801 F.2d 352, 355 (8th Cir. 1986). Further, if indictments obtained in breach of proffer agreements cannot be dismissed, it is unclear how the agreements could be enforced. The Government suggests prohibiting the use of proffer statements in the case-in-chief, but that does not remedy the earlier breach. Lacking grounds to abandon *Kastigar*'s procedure and substitute its own, then, this Court declines to do so.

Ordinarily, following *Kastigar* would mean giving the Government a chance to show that "the grand jury did not use, even in a subtle or subconscious way, any" of the proffered testimony. *Garrett*, 797 F.2d at 664. But a hearing is not required when "it is simply

unreasonable" to believe that. *Id.* at 663-64. This is such a case. As presented to the grand jury, the proffer statements were part of the crimes; it handed down an indictment that listed the statements as overt acts in furtherance of the central scheme. Given that, it is not reasonable to believe the grand jury "did not use" the statements. That use was inappropriate for Counts 1-4 and appropriate for Count 5.

## V. CONCLUSION

Accordingly, Defendant Tate's Motion to Dismiss, Dkt. No. 176, is **GRANTED** and Defendant Benton's Amendment to Motion to Dismiss the Indictment, Dkt. No. 188, is **GRANTED IN PART**. Counts 1-4 are dismissed as against Defendants Benton and Tate.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA