**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESSE R. BENTON,<br>JOHN F.TATE, and<br>DIMITRIOS N. KESARI<br><br>Defendants. | No. 4:15-cr-00103-JAJ<br><br><br><br>**ORDER** |

The indictment in this case charges that Defendants Benton, Tate, and Kesari, in their capacity as officials or political operatives with the 2012 Ron Paul Presidential Campaign ("RPPC"), violated the Federal Election Campaign Act ("FECA") by using a third party to disguise payments made to former Iowa State Senator Kent Sorenson for endorsing Ron Paul. The four-count indictment alleges that Defendants participated in a conspiracy, knowingly concealed a scheme of false payments, caused false campaign contribution reports, and that Defendants Benton and Tate caused false records. [Dkt. No. 323]. Trial is set for April 26, 2016.

This matter comes before the Court pursuant to Defendants' motions to dismiss pursuant to Federal Rules of Criminal Procedure 12(b). [Dkt. No. 394, 396, 414, 468]. Defendants argue that dismissal is warranted because the acts underlying the indictment do not constitute a crime, application of the FECA in this manner renders the law unconstitutionally vague, this matter is for civil and not criminal enforcement, the rule of lenity applies, the indictment is factually insufficient, the indictment was obtained through prosecutorial misconduct, Counts III and IV are multiplicitous in violation of the Double Jeopardy clause. The Government opposes each of the above arguments, and maintains that the indictment specifically delineates conduct that constitutes a crime under the relevant federal law. For the reasons that follow, Defendants' motions to dismiss are **DENIED**.

## I. BACKGROUND

The indictment contains the following factual allegations: From on or about October, 2011,

to on or about August, 2014, Defendants Benton, Tate, and Kesari worked for the RPPC. Defendants Benton and Tate were senior officials, while Defendant Kesari was a political operative. Defendant Kesari reported to Defendants Benton and Tate, who ran the RPPC's campaign operations.

During that time, Sorenson was a Republican Iowa State Senator. Sorenson had already begun working for a different Republican candidate, Michele Bachmann. On or about October 31, 2011, Defendant Benton emailed Sorenson and one of Sorenson's representatives offering to pay Sorenson the salary he was receiving for his work on Bachmann's campaign if Sorenson would withdraw his endorsement of Bachmann and endorse Paul. Between November 15, 2011, and December 28, 2011, Defendant Kesari spoke with Sorenson several times in an effort to persuade him to endorse Paul. On December 24, 2011, Sorenson sent Defendants a draft press release endorsing Paul, and Defendants edited that release. On or about December 26, 2011, Defendant Kesari issued a check to Sorenson in the amount of $25,000 through an account held by a company for which Kesari was a registered agent, and a few days later, Sorenson publicly endorsed Paul. Several days later, Defendants caused the RPPC to issue a statement from Sorenson denying that the RPPC had paid Sorenson for his endorsement after Bachmann publicly alleged such conduct.

At this point, Sorenson had yet to cash the original $25,000 check, and Defendants had made arrangements to pay Sorenson instead by wire transfer. Following Bachmann's public allegations, Defendant Benton emailed Defendants Kesari and Tate telling them to hold the wire transfer "for a couple of days." Defendant Tate responded by affirming Defendant Benton's decision to hold the transfer.

All Defendants proceeded to engage in numerous email exchanges regarding the original $25,000 wire transfer as well as further payments made to Sorenson. Defendants paid a film production company called Interactive Communication Technology ("ICT"), who in turn paid Sorenson's company Grassroots Strategy, Inc. ("GSI"), who then paid Sorenson. However, neither GSI nor ICT ever did any work for the RPPC. According to the Government, the money provided to these organizations was simply for payment to Sorenson for his endorsement of Ron Paul. However, in filing paperwork documenting the RPPC's campaign expenditures, Defendants caused the RPPC to label these payments, ultimately made to Sorenson, as payments to ICT for "audio/visual expenses." None of the RPPC's filings referenced GSI or Sorenson.

## II. ANALYSIS

Defendants move to dismiss the indictment for various reasons pursuant to Federal Rule of Criminal Procedure 12(b). "In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed." *United States v. Polychron*, 841 F.2d 833, 834 (1988). "On a pretrial motion to dismiss an indictment pursuant to Rule 12(b), the court must accept all factual allegations in the Indictment as true." *U.S. v. Kowal*, 486 F. Supp. 2d. 923, 934 (N.D. Iowa 2007) (*citing United States v. Sampson*, 371 U.S. 75, 78–79 (1962)).

### A. Defendants' Failure to State an Offense Claim

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to move to dismiss an indictment for failing to state an offense. "An indictment adequately states an offense if: 'it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.'" *U.S. v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008) (*quoting United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002)).

The FECA requires the treasurer of a political committee to file reports with the Federal Election Commission ("FEC") detailing the committee's "receipts and disbursements" to a designated level of specificity. 52 U.S.C. § 30104(a)(1). A committee treasurer must specifically report the

> name and address of each . . . person to whom an expenditure in an aggregate amount or value in excess of $200 within the calendar year is made by the reporting committee to meet a candidate or committee operating expense, together with the date, amount, and purpose of each operating expenditure.

52 U.S.C. § 30104(b)(5)(A). "Any person who knowingly and willfully commits a violation of [the FECA] involv[ing] the . . . reporting of any contribution, donation, or expenditure" may be subject to imprisonment and/or fines. 52 U.S.C. § 30109(d)(1)(A).

Defendants argue that, even assuming the facts alleged in the indictment are true, the underlying conduct does not constitute a criminal offense. They contend that once a campaign makes an initial payment, there is no obligation to report any subsequent payments that might be made by the initial payee to an ultimate payee. In this case, Defendants allege ICT was an initial

payee and GSI/Kent Sorenson was an ultimate payee. [Dkt. No. 91, 394-1]. The mere fact that certain payment structures do not violate the FECA's reporting requirements has no bearing the Government's allegations against Defendants here—the statements made on the RPPC's FEC filings regarding ICT were false.[1] The Government's theory in this case is that the payments at issue were not payments to ICT for audio/visual expenses, and instead, the payments to ICT were used to disguise the RPPC's payments to Kent Sorenson (through his company, GSI) for his endorsement of Ron Paul.

The Court recognizes the difficulty of the regulatory minutia regarding campaign payments to initial and ultimate payees that has been briefed by Defendants, but also recognizes that it is not necessary to delve into these distinctions in this case.[2] The Government *does not* argue that use of a payment structure wherein an initial disclosed payee goes on to pay other undisclosed payees, in and of itself, violates the FECA. The Government *does* argue that the Defendants caused a false report on an FEC filing, claiming that listing an expenditure to ICT for audio/visual services was a false statement. The Government will not be permitted to argue that merely listing ICT as the recipient is sufficient to render the report false, but will be permitted to argue that combination of a payee used to disguise the true payee, together with a false statement of purpose, is sufficient to violate the statutes alleged in the indictment.

### B. Defendants' Unconstitutionally Vague Claim

Defendants argue that the final decision in *Steve Russell for Congress* illustrates a disagreement between the FEC's general counsel and the Commissioners themselves on the correct statement of the law and what is required by the statue at issue. [Dkt. No. 394-1 Pg. 8]. Defendants say that to hold them "to a standard that lawyers who work for the FEC and comprise the Commission itself disagree upon is the height of injustice." [Dkt. No. 394-1 Pg. 9]. However, the standard for unconstitutional vagueness is not whether lawyers could disagree on the meaning of a statue.  "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited

---

[1] Defendants cite to a new FEC advisory opinion issued after the Court filed its previous order on Defendants' motion to dismiss: *Steve Russell for Congress*, MUR 6894 (October 29, 2015). The Court has considered this opinion, but finds that it provides no new guidance and instead reiterates existing law in the context of that particular set of facts.

[2] To the extent that the Court's prior order on Defendants' motion to dismiss implied that the FECA contains a "bona fide" services requirement, that was not its intent. [Dkt. No. 255]. The order's reference to the *Kirk for Senate* FEC advisory opinion was to factually distinguish *Kirk* from this case.

and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Unconstitutionally vague statutes are those which are not subject to reasonable interpretation. *See Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972).

Defendants argue that appropriately labeling the "purpose" of Sorenson's work for the RPPC according to the federal statues would have been difficult. Defendants note that the Government also does not propose an accurate label for Sorenson's work, which they contend further demonstrates the vagueness and lack of fair notice to Defendants. Defendants mischaracterize the conduct at issue here and the Government's theory. The conduct underlying this prosecution is not Defendants' good faith failure to label the purpose of payments to Sorenson in a sufficiently specific way. This would potentially be the case if Defendants had disclosed payments to Sorenson and described their purpose in a way that was arguably unclear. However, that is not what the Government alleges happened here. Defendants failed to disclose the payments to Sorenson at all, and instead disclosed payments to ICT, a company who performed no work for them, using an arguably sufficient but false purpose statement. The Court finds that the FECA does not "fail to give a person of ordinary intelligence fair notice" that reporting payments to a party who did no work for the campaign, only to allow that party to pay a third, undisclosed party, is forbidden. *United States v. Harriss*, 347 U.S. 612, 617 (1954).

### C. Defendants' Civil Enforcement Claim

Defendants argue that the Government's interpretation of the FECA is novel, and that civil enforcement rather than criminal prosecution is the preferred course. This argument goes hand in hand with Defendants' unconstitutional vagueness claim addressed above. As stated in the Court's previous order on motions to dismiss [Dkt. No. 255], the requirement that a political committee's disclosures reflect reality is not a novel or unreasonable interpretation of the FECA, and it is certainly not a "pioneering interpretation" that "should not be sought or rendered in criminal prosecutions." *United States v. Critzer*, 498 F.2d 1160, 1164 (4th Cir. 1974).

### D. Defendants' Rule of Lenity Claim

Related to Defendant's unconstitutional vagueness and civil enforcement claims discussed above, is their argument that the Court should apply the rule of lenity in this case. Again pointing to supposed disagreements between FEC lawyers and Commissioners as to what the FECA requires, Defendants contend that due process requires this "ambiguous criminal law[] to be interpreted in [their] favor." [Dkt. 394-1 Pg. 11]. "[T]he rule of lenity only applies if, after

considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.' " *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (*quoting Muscarello v. United States*, 524 U.S. 125, 139 (1998)). The Court has already concluded no such grievous ambiguity or uncertainty exists in FECA violations charged here, leaving no application for the rule of lenity.

### E. Defendants' Multiplicity of Charges Claim

Defendants ask the Court to reconsider its prior ruling as to whether Counts III and IV are multiplicitous, and to follow *United States v. Rosen*, 365 F.Supp.2d 1126 (C.D. Cal. 2005). [Dkt. 394-1 Pg. 12].[3] Defendants' argument that the indictment is multiplicitous focuses on the fact that the "conduct charged in both counts is identical," however, that is not the test as enunciated by the United States Supreme Court in *Blockburger v. United States*. *Id.* at 13. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). Here, the same act is being used to constitute a violation of two distinct statutes.

Count III alleges violations of 52 U.S.C. §§ 30104(a)(1), (b)(5)(A), and 30109(d)(1)(A)(i), the establishment of a specific dollar amount of relevant expenditures, specifically, that the expenditure in the aggregate amount to at least $200 within the calendar year. Count IV alleges violation of 18 U.S.C. § 1001(a)(1), requiring that a person "falsif[y], conceal[], or cover[] up" a material fact "by any trick, scheme, or device." These two charges require proof of facts that the other does not: Count III requires proof of a specific dollar amount; and Count IV requires evidence of a scheme or trick. Even if each of the charges in this case did not require proof of different facts and were multiplicitous, dismissal is not warranted. Any concerns with multiplicity can be handled in the jury instructions, or even at sentencing. *See United States v. Roy*, 408 F.3d 484, 491 (8th Cir. 2005) (finding that "multiplicitous indictments may be saved at the trial state if the district court submits and appropriate instruction to the jury."); *United States v. Platter*, 514 F.3d 782, 787 (8th Cir. 2008) (noting Eighth Circuit precedent "provides that the proper remedy when a defendant is convicted of multiplicitous counts is merger of the counts into one count, not a retrial

---

[3] This case is factually distinguishable from *Rosen*, where the indictment charged four separate violations of 18 U.S.C. S 1001(a). In this case, each of the indictment's four counts charges violations of separate and distinct statutes, each requiring proof of a fact that the others do not.

under just one theory of liability.").[4]

### F. Defendant Tate's Factually Insufficient Indictment Claim

Defendant Tate has moved to strike the Government's factual allegation in paragraphs 29(d), 29(g), and 29(h) from the indictment. In moving to dismiss, Defendant Tate claims that once the requested paragraphs are stricken from the indictment, the Government does not have enough factual evidence to maintain the charges against him or to obtain a conviction. The Court has addressed Defendant Tate's argument on this issue fully in its order on Defendant Tate's motion to strike and does not repeat that analysis, but incorporates it by reference here. [Dkt. No. 512].

### G. Defendant Tate's Prosecutorial Misconduct Claim

Defendant Tate argues that the Government presented false testimony to the grand jury with the intent to influence its decision to indict, and that the charges against him should be dismissed with prejudice on the grounds of prosecutorial misconduct. [Dkt. No. 414]. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 409 (1956). "To obtain dismissal of an indictment, a defendant must generally show both flagrant misconduct and substantial prejudice." *United States v. Tulk*, 171 F.3d 596, 598 (8th Cir. 1999). "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *United States v. Morrison*, 449 U.S. 361, 365 (1981).

Defendant Tate's primary claim hinges on paragraph 29(d) of the superseding indictment. [Dkt. No. 323], which alleges the overt act that, "[o]n or about February 7, 2012, KESARI obtained permission by email from BENTON and TATE to cause Political Committee 2 to pay Senator Sorenson." Defendant Tate claims that the Government purposely misled the grand jury with false testimony interpreting emails between the charged co-conspirators. [Dkt. No. 414-1 Pg. 2–5]. He says the Government is misconstruing the following email exchange to claim that he gave approval for payments to Kent Sorenson. On February 7, 2012 at 5:19 p.m. Defendant Kesari emailed Defendant Tate saying, "Did Jesse get Kent paid? He said he would handle it, and Kent is texting me today." [Dkt. 414-1 Pg. 3] Defendant Tate responded, "No idea. Ask him." *Id.* Defendant Tate claims there is no interpretation of this email that can support an inference that he provided

---

[4] The Court makes no comment on the required mens rea of each of these Counts at this time.

approval or permission for payments to Sorenson. Defendant Tate further argues that the rest of the indictment's allegations stem from the overt act alleged in paragraph 29(d), and that "[a]bsent the Government's made up claim about a February 7, 2012 "e-mail approval," there would be nothing before the Grand Jury to connect Mr. Tate to the scheme the Government alleges here." [Dkt. No. 414-1 Pg. 6].

The Government cites to the language of the indictment, along with other pieces of evidence presented to the grand jury, in support of their position that the testimony presented to the grand jury was fulsome, transparent, and truthful. [Dkt. No. 467 Pg. 3]. The indictment says that Defendant Kesari obtained permission by email from "BENTON and TATE," not just Defendant Tate. During the grand jury proceedings, the Government introduced a series of emails exchanged between Defendants Benton and Kesari and between Defendants Kesari and Tate. These emails were introduced to show that "defendant Tate does not explicitly approve a payment to Sorenson; but it is evident from the facts and circumstances under which the e-mail was sent, that his part of the exchange amounted to a tacit approval to do so." [Dkt. No. 467 Pg. 4]. After reviewing the grand jury testimony and evidence, the Court finds that the Government's presentation reflected reasonable inferences based on its theory of the case. The claims advanced by Defendant Tate offer an alternate interpretation of the February 7, 2012 email, but the claims do not illustrate that the Government's interpretation or theory was false. "To the extent that a challenge is made to the accuracy of the summaries, the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988). Defendant Tate has neither shown flagrant misconduct by the Government, or resulting substantial prejudice, therefore the Court finds no prosecutorial misconduct in obtaining the indictment.

### H. Defendant Kesari and Benton's Double Jeopardy Claim

Defendant Kesari moves to dismiss Counts III and IV contending they are brought in violation of the Double Jeopardy clause of the Fifth Amendment. [Dkt. No. 396]. Defendant Benton joins in this motion. [Dkt. No. 468]. This issue is briefed in one paragraph, making it difficult for the Court to fully understand Defendant's Double Jeopardy claim. It seems that Defendants first move to dismiss "for the reasons stated in part VI of the Tate Brief." [Dkt. No. 396-1 Pg. 1]. The Court addressed and decided these claims in Part II.E of this order. The second alleged grounds for dismissal only applies to Defendant Kesari. Defendant Kesari states that "he

was convicted of Count II of the original indictment of October 2015" and cites to *United States v. Platter* as standing for the proposition that "an indictment is multiplicitous if it 'charges the same crime in separate counts" with [sic] "the primary problem [sic] that the jury can convict on both counts, resulting in two punishments for the same crime in violation of the Double Jeopardy Clause of the Fifth Amendment." [Dkt. No. 396-1 Pg. 1–2] (*quoting United States v. Platter*, 514 F.3d 782, 785 (8th Cir. 2008). Defendant Kesari does not elaborate on this argument, but the mere fact that he was convicted on Count II previously does not change the multiplicity analysis above—Count II requires proof of different facts than Count III and IV, and therefore the charges in the indictment are not multiplicitous and do not violate his Fifth Amendment due process rights.

### III. CONCLUSION

In the instant case, the indictment charges multiple illegal acts with sufficient particularity to withstand dismissal. Charging of these crimes as set forth in the indictment does not violate Defendants' right to due process or their protection from double jeopardy. The circumstances of this case do not amount to prosecutorial misconduct. Finally, this case is properly brought as a criminal prosecution and not a civil enforcement, and the rule of lenity does not apply.

Upon the foregoing,

**IT IS ORDERED** that Defendants' motions to dismiss [Dkt. No. 394, 396, 414, 468] are **DENIED**.

**DATED** this 20th day of April, 2016.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA